HOEFHEIMER, J.
The legal question in this case is, who are the "legal heirs” of Mary Louise Ulmer, deceased, daughter of Frederick Ulmer, Avho died testate, leaving an estate which, according to the evidence, was acquired by purchase. lie left surviving him several brothers, and sisters and nephews and nieces, children of deceased brothers and sisters. Also a wife, Mary Ulmer, and Mary Louise Ulmer (daughter) and Eliza Reif, the plaintiff (married) who, the evidence shows, ivas half-sister of Mary Louise—being a, daughter of Mary Ulmer by a former marriage.
It will be noted, however, that the plaintiff is five times referred to in the will, and provision is made for her as “my daughter” and it may be stated, in passing, that the extrinsic evidence shows her to have been brought up by testator as his daughter, and his treatment of her and the affection and care lavished on her from infancy to his death ivas consistent with the relation of father and daughter. It is also to be noted that mention is at no time made in the will of these defendants; unless it be held, that by actual or legal intent, they are designated by use of the phrase "legal heirs of Mary Louise.”
Frederick Ulmer as stated left a-last will and testament. Item 4 of such will is as follows:
"I give and bequeath to my daughter Mary Louise Ulmer at death of my said Avife, or in case she should marry, at the time of such marriage, the following described real estate, to-Avit, * s * to have and to hold the same to the said Mary Louise *236 Ulmer for and during her natural life, subject however to the following conditions, to-Avit: my said daughter Mary Louise shall not, at any time encumber the said premises with any mortgage or other lien Aidiatever, and if she shall marry before the death of my wife, it is my will that she (my said daughter) shall pay to my wife out of the rents and issues of my said property a monthly installment of $65, such payment to be made promptly each month during the lifetime of my said Avife; and my said daughter Mary Louise shall from the moment she takes possession of said premises, pay the taxes, assessments, insurance and all expenses whatsoever for necessary repair’s and improvements, and at the death of my said daughter, Mar$ Louise, the premises above described and bequeathed to her- for and during her lifetime, shall descend and fall to her legal heirs to have and to hold the same to them absolutely and forever.”
Mary Louise Ulmer subsequently died, never having married. She left surviving her, her mother, Mary Ulmer, her half-sister Eliza Reif (the plaintiff), and the defendants—brothers and sisters and certain children of brothers and sisters of her father.
After the death of Mary Ulmer, wife of testator, this plaintiff took possession of the real estate in controversy and commenced an action to quiet title against defendants, Avho were asserting claim to the property.
Under this state of facts, is this plaintiff (not of the blood of Frederick Ulmer, but half-sister of Mary Louise) entitled to said real estate in fee simple, or are defendants, entitled to the property as the “legal heirs of Mary Louise,” they being also of the, blood of testator!
Immediately after the trial of the issues involved Miller v. Miller was decided by the Circuit Court of Guernsey County (0 C. C.—NeAV Series, 242), and it AAms insisted by the plaintiff that it was decisive of the contention here. I have held the case by understanding Avith counsel pending action by our Supreme Court in the Miller case. That tribunal has uoav affirmed said case, and from a consideration of the printed briefs of counsel in that ease and the conclusions reached by our Supreme Court,. I can not but conclude that the Miller case is decisive of the ease at bar.
The able counsel for the defendants in the case before me contend that the words “legal heirs” Avere used by the testator in their “flexible” sense and that testator thereby meant “ehil *237 dren "-1; that this - is further evidenced by the use of the peculiar phrase' “descend and fall.” There having been no children (of Mary Louise), these defendants claim that the estate pássed to Mary Louise by inheritance—came to her by deseen.!. That therefore it is ancestral property under Section 4158, Revised Statutes of Ohio, and passes to these defendants. Defendants further claim that if the actual intent of testator can not be ascertained and that if “legal heirs” does not mean “children,” but means “heirs” in the technical sense, that thou such words must be held to mean the legal heirs who would have been entitled to inherit this property had there been no will (of testator) at the termination of Mary Louise’s life estate. That under such construction these defendants would be designated by lav7 as heirs under Section 4158.
In view of the language used in- this will however it would seem to me that a court would hesitate to adopt the latter theory because it arbitrarily imputes to the testator an intention, and calls for a result seemingly at variance with testator’s express language. Such construction of necessity prefers the testator’s blood, whereas the testator does not say, as he might easily have done, that the property should go to his heirs; or the heirs of his blood • or the legal heirs of his blood; but he expressly says, “legal heirs of Mary Louise.” Nor would it be easy to reconcile-the result of such construction with what the testator probably intended and as shown in repeated, solemn declarations that Eliza was his daughter, and the law will not impute a meaning contrary to testator’s probable intention. (See language of O’Brien, J., in Johnson v. Brasington, 156 N. Y., 181.) And further, such construction is not favored, for in Mooney v. Purpus, 70 O. S., 57, 65, 66, it is said:
“Primarily the object of making a will is to direct another and different mode of distribution of the testator’s estate from that marked' out by the law of descent. That Frank Koehl made a will is a circumstance tending to show, that he intended thereby fo make provision for his heirs different from that which the law would make,- and the fact that he made- a will is a fact that weighs against such construction as is here contended for * * * because if the construction for which they contend is to prevail, it would at most only accomplish that which the law itself would effect in the absence of any such clause or provision.”
*238 Or, if the words “legal heirs” are to be taken in their flexible rather than in their technical sense, and as meaning “children,” as becomes permissible under certain recognized conditions— the claim most strongly asserted by these defendants—such construction likewise can not be adopted because the face of the will, to say nothing of the circumstances, does not warrant it. In the will (Item 4) the words “legal heirs” contemplate two contingencies with reference to Mary Louise. By this item, it is io bo noted, a life estate in possession is given to Mary Louise (I) at the death of testator’s wife; or (2) in event she (Mary Louise) married during the life of the wife, and at such time.
As, then, testator contemplated Mary Louise unmarried and also married, manifestly he could not have used the words as meaning children alone, but must have used them with the intention of disposing of the estate to legal heirs of Mary Louise, whether she had children or not, a construction also in accordanee with the policy of the law.
If the words “legal heirs” were taken to mean children only— then, there being no 'children—it would be necessary to hold that there is no devise of the contingent remainder. But the law always favors a construction that will prevent partial intestacy', to1 one that will permit it. It is, therefore, a fatal weakness in the argument in support of defendants’ contention that if “legal heirs” means “children” (bearing in mind -that there might be failure of children), it imputes to him an intention to not dispose of his land by the will, which is contrary to the strong-presumption against intestacy and the words of the will. See Johnson v. Brasington, supra.
By reason of the foregoing t'he construction sought by defend-' ants can not prevail. Since it is clear testator intended to dispose of the estate by the will to legal heirs of Mary Louise, we must consider the nature of the property involved in order to determine the meaning of the word “heir,” and -to discover the “heir’s” identity.
Now in the Miller case, supra, testator Miller died possessed of an estate acquired by purchase (as in the case before me). He left several sons and after provision for some of them, we find' a devise to Peter (unmarried at the time the will was executed) and who subsequently married and died without children but' leaving a wife. The devise to Peter was as follows;
*239 “1 give and devise to Peter Miller during his natural life only, all that portion * "; at the death of my said son Peter Miller I devise the land so devised to him. to ‘Ms lawful heirs'.’ ”
An aetion in partition was commenced and the court was called on to construe the words “lawful heirs.” The issue was between “heirs” of Peter (life tenant), which heirs were of the, blood of testator, a life tenant, and the “heir” of Peter, life tenant (his wife), who was not of testator’s blood. In other words, the brothers of Peter asserted ownership of fee as against the wife of Peter. The wife however was adjudged the owner of the fee, as “lawful heir.” .Manifestly, such a conclusion could not have been reached under Section 4158, for under that section a life estate only could have passed to her, whereas her identity being established as lawful heir under Section 4159 she would be entitled to the fee.
Pending the termination of- the life estate of Peter (as here Mary Louise) -the fee could not have been in abeyance (Gilpin and wife v. Williams, 25 O. S., 283). Awaiting the appearance-of Peter’s “lawful heirs” (Mary Louise’s “legal heirs”), where was the fee? In the Miller case -the particular estate to Peter (as here to Mary Louise) was limited to him for life and there is no remainder carrying the fee during the life of Peter (Mary Louise). If that ease was rightly decided, the fee could not have been in Peter as undisposed of, that is, by inheritance. If such had been the judgment of the Supreme Court then the “lawful heir” would have been identified through Section 4158, which for reasons already stated could not have been the case owing to the conclusions reached.
Plainly the court-must have entertained some other theory. In the 24th- Am. & Eng. Ency. of Law, 413, the following principle is. set out:
“Where a testator limits a particular estate to the heir, with a contingent remainder over, without any ulterior vested remainder carrying the fee, so that the inheritance descends- to the heir until the contingency happens, at the very time, that the particular estate first takes effect, the particular estate is merged only 'sub' ihodo, so as to open for the interposition of the remainder, 'when the contingency happens.”
*240 Applying this principle, the fee must have descended, to Retejas heir, not however in beneficial enjoyment or to cause a merger of the two estates, but as claimed by the plaintiff here, in some manner lo carry out the will until the appearance of the lawful heirs'bn Peter’s death.
By parity of reasoning, in the case under consideration, the fee descended to Mary Louise, heir of testator, by act of testator to await the happening of the contingency provided for. Her possession would be imperfect—there could be no merger as would ordinarily follow, but acting it seems by way of exception to the general rule (see the opinion in Craig v. Warner, 5 Mackey [D. C.], 460) the two estates merge sub.modo, and open upon the appearance of heirs of Mary Louise, vesting- such heirs' with a reversion in fee and carrying out the provisions of the will and the intention of the testator to dispose of the contingent remainder. As then the estate in Mary Louise was not one as to which she could have died intestate—she never having the full beneficial estate of inheritance—an estate as to which heirs might, have traced immediately through her, and as the proof shows-the estate was acquired by Frederick Ulmer by purchase and dis-' posed of by will, to 1 ‘ legal heirs, ’ ’ the legal heirs are not to be. looked for in Section 4158, the ancestral statute, but their identity is established in Section 4159, the non-aneestral statute. . See Brower v. Hunt, 18 O. S., 312. By virtue of paragraph 4 of said section plaintiff, half sister of Mary Louise, is identified as such legal heir. This construction gives meaning and vitality to both contingencies referred to in Item 4, obviating a finding- that there was no devise of the contingent remainder, because of failure of children, and under it this estate “descends' and falls” in the ordinary meaning of the words (compare “descend and pass,” language of the non-aneestral statute) 1o Eliza Reif (mentioned five times as my daughter by the testator). and does not first “descend and pass” and then “ascend” to collateral relatives (at no time mentioned by testator), as would have been the case if it were to be held that they were the heirs' under Section 4158. '
For these reasons I am of opinion that plaintiff should prevail and judgment is accordingly rendered for the plaintiff with costs.